IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *ex rel.* Lou Boggs and Kim Borden, | ) | |
| | ) | |
| Plaintiff/Relator, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-25-L |
| | ) | |
| BRIGHT SMILE FAMILY DENTISTRY, P.L.C., | ) | |
| a/k/a Brite Smile Family Dentistry, a/k/a | ) | |
| Bright Smile Family Dentistry Family & | ) | |
| Cosmetic Dentistry, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

This matter is before the court on the Motion to Dismiss Relators' Amended

Complaint filed by defendants Eli Tanios Jarjoura, Julie Speights, and Bright

Smile Family Dentistry, P.L.C., ("Bright Smile defendants"), filed pursuant to

Federal Civil Procedure Rule 12(b)(6) **[Doc. No. 20]**.  Plaintiffs/Relators Lou

Boggs and Kim Borden (collectively "relators") have filed their response in

opposition to the motion, and the Bright Smile defendants filed a reply brief, all of

which the court has considered.  In addition, defendant Elie Abou-Nassar, D.D.S.,

and Elie Abou-Nassar, D.D.S., P.L.L.C., ("defendant Abou-Nassar") has filed a

Motion to Dismiss **[Doc. No. 33]**, which "adopts as its own motion the Motion to

Dismiss Relators' Amended Complaint and Brief In Support and exhibits," filed by

the Bright Smile defendants.  Defendant Abou-Nassar further adopts the

corresponding reply brief filed by the Bright Smile defendants.  Relators have responded to this dismissal motion as well.[1]

The court has carefully reviewed the allegations of the Amended Complaint Pursuant to 31 U.S.C. § 3730 [Doc. No. 18] ("Amended Complaint"), and the submissions of the parties seeking dismissal pursuant to Rule 12(b)(6). The Amended Complaint contains four causes of action brought under various provisions of the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.*, (Counts I through IV), and one cause of action alleging a violation of the Oklahoma Medicaid False Claims Act, 63 O.S. § 5053, *et seq.* (Count V).

Briefly stated, the Amended Complaint alleges that defendants, who practice dentistry in the state of Oklahoma, distributed inducement coupons through a variety of publications in the Oklahoma City and Edmond metropolitan communities.  Amended Complaint, ¶¶ 3-13, 21.  Relators allege that the inducement coupons appear in the publications along with information which states that Medicaid is accepted[2] and contain a coupon at the bottom of the page which stated to "bring in this coupon for a $15 gas card.  Redeem coupon at time of dental appointment."  Id., ¶ 22, Exhibit 1.  Relators allege that the inducement does not indicate that the coupon would be invalid for those patients seeking

---

[1]     Four of the remaining defendants have filed Answers to the Amended Complaint.  *See* Doc. Nos. 22, 27, 29 & 31.

[2]     One of the advertisements within Exhibit 1 to the Amended Complaint also states that SoonerCare Dental is gladly accepted.

coverage, in whole or in part, through a government funded healthcare program such as SoonerCare.  Id.  Paragraph 22(a) of the Amended Complaint alleges that the inducements, which were discovered by the relators in approximately July of 2008, are created and distributed by defendant Bright Smiles Family Dentistry, P.L.C. with the consent and aid of each individual and corporation named in the Amended Complaint.  It is alleged that the inducement advertisement also states that the defendants will provide courtesy transportation to all patients who have appointments and who need the service.  Id., ¶ 23.

Paragraphs 24 and 24(a) of the Amended Complaint allege that although the inducements and coupon documents state that each of the dentists listed on the publication are considered independent personal corporations, none of the independent personal corporations are appropriately registered with the Secretary of State of Oklahoma.  Paragraph 25 of the Amended Complaint alleges that, at each location, relators received office cards indicating that the physicians are acting as a group under the Bright Smiles Family Dentistry umbrella.  Relators allege that the office cards contain the names of the physicians with no mention of the independent corporations.  Id.  The business cards are alleged to contain the address of the corporate office registered to the "Bright Smiles general provider number[.]" Id.  Relators allege that the offices

freely refer[3] to each other and hold themselves out to be the same provider.  Id.
The Amended Complaint alleges that SoonerCare requires that each eligible provider sign a contract which details certain laws and regulations that must be complied with, including the False Claims Act.  Id, ¶ 26.

Relators allege that they each visited Bright Smiles dentistry facilities, with children related to them, for appointments regarding the children's dental work.  Id., ¶ 27.  Relators allege that each of the children taken for these appointments was receiving SoonerCare and the location was so informed before the children were seen.  Id.  It is alleged that during each visit of the SoonerCare patients, one of the relators presented the inducement coupon and was given, either in person directly or by mail, $15 in gas coupons which were to be used at 7-Eleven.  Id. Sample coupons are attached as Exhibit 4 to the Amended Complaint.[4]

Paragraph 28 of the Amended Complaint states the following:

As an example of the inducement scheme that happened with every child, one instance with records and bills from beginning to end is here described.

a)    A young child, Ty William Borden [. . .], was taken by Relator Borden to the following appointments:

i) February 17, 2009, 224 W. Gary [sic], Norman, Oklahoma (hereinafter "Norman"), at 12:00 p.m.  He was seen by Dr. Jason Chang.

---

[3]    It appears to the court that relators in this paragraph are alleging that the offices refer patients to each other.

[4]    The court notes that the coupons state they are "good only in Cleveland, Oklahoma and Canadian Counties."

The coupons for Ty were given directly to Kim Borden at the child's visit when the coupon from [M]etro [F]amily was presented.  At the end of this appointment, the dentist determined that he needed more extensive work which the office he first visited was not capable of so he made a second appointment for Ty at the Edmond office.

(1) Sooner care was billed in amounts $67.00 for a cleaning and $283.00 for filling a cavity on this first visit.  SoonerCare paid $33.57 for the cleaning on this visit along with $137.64 for the cavity filling. ([S]ee Exhibit "5" [to Amended Complaint] for the attached billing information and payment confirmation).

(2) The SoonerCare billing was done directly by the Defendants in this case and the payment was made specifically to the provider doctor listed above.

(3) No money was ever returned to SoonerCare in connection with this visit.

ii)     February 24, 2009, 3225 Teakwood Ln., Edmond, OK (Hereinafter "Edmond"), at 11:00 a.m.  He was seen by Dr. Abdessamad Benbajja.  The coupons for Ty were given directly to Kim Borden at the child's visit when the coupon from [M]etro [F]amily was presented.

(1) At this appointment Bright Smiles Family Dentistry and the involved individuals were aware that Ty William Borden was on SoonerCare and they billed SoonerCare directly for the expenses of the visit.

(2) At this appointment, extensive work was done on Ty Borden which included: two root canals, the capping of five baby teeth, anesthesia by nitrous oxide and an anesthesia IV.  These procedures were recorded and billed to SoonerCare for the patient as recorded by the attached procedure number list which was provided to SoonerCare for billing.  At the time, Ty Borden still had all of his baby teeth.

(3) SoonerCare was billed $3,498.00 for this second visit and paid $1,925.24 on the work done to [sic] Dr. Abdessamad Benbajja (see Exhibit "5" [to Amended Complaint] for the billing and payment information.)

(4) No monies from this visit's payment were ever returned to SoonerCare.

Following the recitation of alleged facts, relators set forth the four causes of action described previously, along with a request for damages.

The court's inquiry in assessing the sufficiency of the Amended Complaint under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (citation omitted).  To survive a motion to dismiss under this standard, a plaintiff or, as here, the relator, must nudge its claims across the line from conceivable to plausible.  Id.  The court must bear in mind, however, that a judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the grounds that it appears unlikely the allegations can be proven.  Robbins v. Oklahoma *ex rel.* Dept. of Human Services, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal citations and quotation omitted).

> Thus, "plausible" cannot mean "likely to be true."  Rather, "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs, "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if

assumed to be true, the plaintiff plausibly (not just speculatively) has a
claim for relief.

Id. (citations omitted).  The court must also be mindful of Fed. R. Civ. P. 8(a)(2),

which provides that the complaint must contain " a short and plain statement of

the claim showing that the pleader is entitled to relief."   The degree of specificity

necessary to establish plausibility and fair notice, and therefore the need to

include sufficient factual allegations, depends on context.  Robbins, 519 F.3d at

1248 (citations omitted).  In analyzing the sufficiency of the complaint, the court is

not limited to the four corners of the complaint, but may also consider documents

referred to in the complaint.  Pace v. Swerdlow, 519 F.3d 1067, 1072 (10th Cir.

2008).  Since relators' claims necessarily involve allegations of fraud, the court

also looks to Fed. R. Civ. P. 9(b), which provides in pertinent part that: "In all

averments of fraud. . . the circumstances constituting fraud . . . shall be stated

with particularity.  Malice, intent, knowledge and other conditions of mind of a

person may be averred generally."   In order to plead fraud with particularity, the

complaint must "set forth the time, place and contents of the false representation,

the identity of the party making the false statements and the consequences

thereof."  Koch v. Koch Indus., 203 F.3d 1202, 1236 (10th Cir. 2000) (citation

omitted).

    In their Motion to Dismiss, the Bright Smile defendants argue that the

relators have merely recited elements of potential statutory grounds for liability,

but that they have not pled facts sufficient to support plausible claims for relief. The moving defendants assert that the alleged conduct at issue conforms to permissible actions outlined in a series of opinions issued by the Department of Health & Human Services Office of Inspector General ("OIG").  The brief in support of the motion discusses three OIG advisory opinions, which are also attached as exhibits.

In their response, the relators also rely on citations to certain other OIG advisory opinions to argue against dismissal.  The parties agree that such OIG advisory opinions provide advice on how the applicable laws are to be applied to specific fact patterns, and, although not binding on the court, they can have persuasive value.

The court has reviewed the three OIG advisory opinions relied upon and discussed by defendants.  The first OIG opinion, No. 00-7, attached as Exhibit 2 to Defendants' Motion to Dismiss [Doc. No. 20], involved a hospital offering free transportation services between the hospital's facility and a patient's residence. In 00-7, the hospital did not advertise the availability of the transportation services.  The second OIG opinion, No. 09-01, attached as Exhibit 3 to Defendant's Motion to Dismiss [Doc. No. 20], dealt with a complimentary local transportation program for friends and family of residents of a skilled nursing facility.  The facility was not easily accessible by public transportation and was separated from its primary historical service area by a toll bridge.  The

transportation was only provided to and from designated public locations and the

nursing facility.  The third OIG opinion, No. 11-02, attached as Exhibit 4 to

Defendant's Motion to Dismiss [Doc. No. 20], concerned a complimentary local

transportation arrangement whereby a hospital would transport patients from

physician offices located on, or contiguous to, the hospital's campus to the

hospital if the patients required further treatment and could not transport

themselves.  The transportation services were thought to be necessary because

the 108-acre hospital campus had limited close-in parking and the campus

walkways might be difficult for feeble, elderly patients to navigate.  The services

were not advertised, rather, physicians were informed of the availability of the

service provider's transportation program.

More generally, the advisory opinions indicate that free transportation

programs falling within the "nominal value" guidelines, *i.e.*, no more than $10 per

item, or $50 in the aggregate on an annual basis, may be permissible under

certain circumstances.  Defendants maintain that their gas card promotion and

offer of free transportation are similar to those that have been approved of by the

OIG.  They assert that the $15 gas cards provided in this case were of "nominal"

value since the Amended Complaint does not show that any one child received

more than $50 total per year.  Defendants further argue that even if the court

were to find that the value of the gas cards exceeded the nominal value limits, a

consideration of the factors outlined in the OIG opinions would demonstrate that

the free gas card promotion was permissible. These factors include, but are not limited to, a consideration of the following:

- The population to whom free transportation services are offered.

- The nature or type of free transportation services offered.

- The geographic area in which free transportation services are offered.

- The availability and affordability of alternate means of transportation.

- Whether free transportation services are marketed or advertised and, if so, how.

- The type of provider offering the free transportation services.

- Whether the costs of the free transportation services will be claimed directly or indirectly on any Federal health care program cost report or claim or otherwise shifted to any Federal health care program.

*See* OIG Advisory Opinion No. 00-7, Exhibit 2 to Defendants' Motion to Dismiss [Doc. No. 20]. In connection with identifying and applying the non-exclusive list of factors to be considered, the OIG has stated that "given their potential for abuse, we evaluate arrangements involving free transportation services on a case-by-case basis." *See* OIG opinion No. 00-7, Doc. No. 20-2, p. 3 of 6; OIG opinion 09-01, Doc. No. 20-3, p. 6 of 10.

Upon review of the factual scenarios discussed in the OIG opinions relied upon by the defendants, the court concludes the opinions are not determinative of

the plausibility of relators' claims because they are based on factual situations

that differ from the core allegations in this case.  Thus, their ultimate

persuasiveness is quite limited.

Upon review of the allegations of the Amended Complaint, the court finds

that they provide the moving defendants with sufficient notice of the facts upon

which relators base their claims.  Whether these claims may ultimately succeed is

not appropriate for determination at this time.  The court finds that the relators

have alleged enough factual material at this stage of the case to prevent outright

dismissal of the Amended Complaint under Rule 12(b)(6).  The arguments made

in the dismissal motions are not sufficiently compelling to support dismissal at this

early stage.  Furthermore, the issues raised by defendants in the submissions to

the court would require the resolution of factual questions – an undertaking which

would not be appropriate at this stage of the proceedings.

Mindful of the pertinent authorities, and considering the relators' claims in

their context, the court concludes that the relators have alleged enough facts to

state claims that are "plausible."  As such, and in light of the standard for granting

a motion to dismiss, the court concludes that the Motion to Dismiss Relators'

Amended Complaint filed by defendants Eli Tanios Jarjoura, Julie Speights, and

Bright Smile Family Dentistry, P.L.C., ("Bright Smile defendants"), filed pursuant

to Federal Civil Procedure Rule 12(b)(6) **[Doc. No. 20]** and the Motion to Dismiss

Relators' Amended Complaint filed by defendant Elie Abou-Nassar, D.D.S., and

11

Elie Abou-Nassar, D.D.S., P.L.L.C., **[Doc. No. 33]**, which adopted the motion to dismiss and reply brief of the Bright Smile defendants, should be and are hereby **DENIED.**  However, nothing in this order should be construed as discouraging any party from filing a fully supported motion for summary judgment, if appropriate, once discovery has been completed.

It is so ordered this 17th day of February, 2012.

_Tim Leonard_

TIM LEONARD
United States District Judge